IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| JAN W. EDWARDS,<br><br>    *Plaintiff*,<br><br>v.<br><br>THE UNITED STATES OF AMERICA,<br><br>    *Defendant*. | §<br>§<br>§<br>§<br>§   Civil Action No. SA-12-CV-817-XR<br>§<br>§<br>§<br>§ |

**ORDER**

On this day the Court considered Plaintiff's motion for partial summary judgment (Doc. No. 14). For the following reasons, the motion is granted in part and denied in part.

**I. Background**

**A. Factual Background**

The following facts, set out in Plaintiff's original complaint and the report of Plaintiff's expert Dr. Albert Weihl, appear to be undisputed.

On November 27, 2011, Plaintiff Jan Edwards arrived at the Audie L. Murphy Memorial Veterans Hospital Emergency Department complaining of an "acute increase in upper back/posterior chest pain" that he had been experiencing since 2:00 AM that morning. At approximately 2:14 PM Plaintiff underwent an electrocardiogram which was interpreted by Dr. Van Ligten as showing "NSR @ 85bpm; inverted inferior T waves; NSST changes." Plaintiff did not undergo any additional electrocardiograms on November 27.

After the initial evaluation by Dr. Ligten, Plaintiff was transferred to the care of Dr. Renee Dunn from the hospital's cardiothoracic surgery department. Following Dr. Dunn's

1

examination, Plaintiff was "cleared by thoracic surgery" at approximately 9:01 PM and soon after was discharged from the hospital with a diagnosis of: (1) cervical radiculopathy with chest and upper back pain, (2) known thoracic aneurysm which is stable and pending surgical intervention, (3) hypertension, controlled, and (4) diabetes, poorly controlled.

The next day, November 28, 2011, Plaintiff arrived at the South Texas Veterans Health Care System Primary Nurse Clinic at approximately 2:43 PM complaining of shortness of breath and chest pain. He was transported to an outside hospital at which point he was found to have an "extensive myocardial infarction of approximately 24-hrs duration."

On November 29, 2011, Plaintiff was transferred to the Audie L. Murphy Memorial Veterans Hospital where he underwent cardiac catheterization. Evaluations done at the hospital indicated that he had: LAD ostial total occlusion, RCA stenosis of 95-99%, LCx stenosis of 80%, and a depressed LVEF of 30-35%. Since that time Plaintiff has undergone surgery for placement of an automatic cardiac defibrillator and has been referred for cardiac transplant evaluation.

**B. Procedural Background**

Plaintiff filed his original complaint with this Court in August of 2012, seeking damages pursuant to the Federal Tort Claims Act. Plaintiff alleges medical malpractice on the part of Defendant, acting by or through its agents, servants, or employees at the Audie L. Murphy Memorial Veterans Hospital.

Defendant filed its answer to Plaintiff's original complaint in November of 2011. Thereafter, Plaintiff filed the instant motion for partial summary judgment, seeking summary judgment on the "issues of liability and causation." Defendant filed a response to the motion and Plaintiff filed a reply.

## II. Legal Standard

Partial summary judgment for the plaintiff is proper when the evidence shows that there is no genuine dispute as to any material fact relating to one or more elements of the plaintiff's cause of action, thereby entitling him to judgment on those elements as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The dispute concerning a material fact may be classified as "genuine" if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The court must draw reasonable inferences and construe the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, the nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

## III. Discussion

### A. Applicability of Texas Medical Malpractice Law Pursuant to the Federal Tort Claims Act

The Federal Tort Claims Act authorizes civil actions against the United States for personal injury or death caused by the negligence of a government employee under circumstances in which a private person would be liable under the law of the state in which the negligent act or omission took place. *Hannah v. United States*, 523 F.3d 597, 601 (5th Cir. 2008) (citing 28 U.S.C. §§ 1346(b)(1), 2674). Since the alleged negligence in this case took place in Texas, Texas law controls Plaintiff's allegations of medical malpractice. 28 U.S.C. § 1346(b)(1).

In Texas medical malpractice actions, the plaintiff has the burden of proving: (1) the physician's duty to act according to an applicable standard of care, (2) a breach of that standard of care, (3) an injury, and (4) a causal connection between the breach of care and the injury. *Nowzaradan v. Ryans*, 347 S.W.3d 734, 740 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

Plaintiff has moved for summary judgment on the "issues of liability and causation." Defendant only disputes that the elements of causation and damages are satisfied. For this reason, Plaintiff's motion is granted with regard to the elements of duty and breach.

**B.  Legal Standard for Causation**

In Texas, the general rule has long been that expert testimony is necessary to establish causation as to medical conditions outside of the common knowledge and experience of laymen. *See Guevara v. Ferrer*, 247 S.W.3d 662, 665 (Tex. 2007). Under this rule, non-expert evidence can only support a finding of causation in circumstances where both the occurrence and conditions complained of are such that the general experience and common sense of laypersons are sufficient to evaluate the conditions and whether they were probably caused by the occurrence. *Jelinek v. Casas*, 328 S.W.3d 526, 534 (Tex. 2010). Cases that fall within the exception to the general rule include those where the negligence alleged is in the use of mechanical instruments, operating on the wrong portion of the body, or leaving surgical instruments within the body. *Kingwood Pines Hosp., LLC v. Gomez*, 362 S.W.3d 740, 751 (Tex. App.—Houston [14th Dist.] 2011, no pet.); *Broxterman v. Carson*, 309 S.W.3d 154, 159 (Tex. App.—Dallas 2010, pet. denied).

When expert testimony is required for the plaintiff to establish causation, it is not enough for an expert to simply opine that the defendant's negligence caused the plaintiff's injury. *Jelinek*, 328 S.W.3d at 536. Rather, the plaintiff's expert must, to a reasonable degree of medical

probability, explain how and why the defendant's negligence caused the injury. *Id.* Further, when the facts may support more than one possible conclusion, of which only some establish that the defendant's negligence caused the plaintiff's injury, the plaintiff's expert must explain why those conclusions are superior based upon verifiable facts. *Id.* Thus, for a plaintiff to meet his burden of proof his expert evidence must show more than a possible causal connection, it must establish that it is more likely than not that the ultimate harm resulted from the defendant's negligence. *Id.* at 537.

In instances where expert testimony is needed to establish causation, Texas courts have held that lay testimony is insufficient to refute competent expert testimony. *Anderson v. Snider*, 808 S.W.2d 54, 55 (Tex. 1991). Accordingly, if a plaintiff presents sufficient expert testimony in support of his motion for summary judgment, a nonmovant defendant in response must produce controverting expert testimony of its own that raises a material fact issue. *See Castaneda v. Aetna Health, Inc.*, 2009 U.S. Dist. LEXIS 84610, at *13 (E.D. Tex. Aug. 12, 2009) (noting that in Texas medical malpractice cases, the preclusion of summary judgment is dependent upon expert testimony); *Arguello v. Gutzman*, 838 S.W.2d 583, 587 (Tex. App.—San Antonio 1992, no writ); *Brumfield v. Ruyle*, 270 S.W.3d 597, 608 (Tex. App.—Fort Worth 2007, no pet.). If controverting expert testimony is deemed "conclusory" it will be insufficient to create a question of fact. *McIntyre v. Ramirez*, 109 S.W.3d 741, 749 (Tex. 2003); *Whirlpool Corp. v. Camacho*, 298 S.W.3d 631, 637 (Tex. 2009).

**C.  Whether a Genuine Issue of Fact Exists with Regard to the Element of Causation**

Since this case revolves around the failure to diagnose Plaintiff based upon his electrocardiogram results and the injuries, if any, caused by this failure, it is clear that it is not one that falls within the common knowledge of laymen. *See Guevara*, 247 S.W.3d at 665.

Accordingly, the Court's determination on the element of causation turns on the parties' expert testimony.

Plaintiff's contention regarding causation is presented by the testimony of his retained expert, Dr. Albert Weihl. In his report, Dr. Weihl testifies that he reviewed Plaintiff's medical records and determined the following:

> Had Dr. Van Ligten properly interpreted the electrocardiogram performed at 2:14 PM on November 27, 2011 when Mr. Edwards was in the early stages of a myocardial infarct, as evidenced by the normal Troponin I, Mr. Edwards would have benefitted from reperfusion therapy with likely preservation of his LVEF, thereby avoiding the need for future cardiac transplantation. Had Dr. Dunn reviewed the data available to her prior to discharging Mr. Edwards and also repeated an electrocardiogram prior to his discharge, Mr. Edwards would have benefitted from treatment of a myocardial infarction on November 27, 2011, preserving some greater degree of cardiac function than was found on subsequent evaluations.

(Pl.'s MSJ, Ex. 1.) Similarly, Plaintiff's expert Dr. John Elefteriades testified that Plaintiff's electrocardiogram results raise a suspicion of acute infarction and so in his opinion the diagnosis of myocardial infarction was missed. Dr. Elefteriades thus concluded that the physicians' failure to properly diagnose Plaintiff resulted in delayed treatment which in turn led to severe depression of his "left ventricular function with end-stage cardiomyopathy." (Pl.'s MSJ, Ex. 3.)

In response, Defendant presents the declaration of Dr. Suraj Maraj. In its entirety, Dr. Maraj's testimony regarding causation is as follows:

> It is my opinion that had Mr. Edwards been admitted for observation on initial presentation it is possible that the level of damage to his myocardium would have been less. In patients who have coronary artery disease, like Mr. Edwards, they are likely to have recurrent episodes of angina despite optimal medical therapy and revascularization. That is to say, even if a stent had been placed soon after Mr. Edwards' initial presentation, it is impossible to say with any degree of certainty, that this would have prevented reoccurrence of his angina.

6

(Resp., Ex. 1.) Dr. Maraj's testimony suggests that even if Plaintiff had been correctly diagnosed and admitted for immediate treatment on November 27, it is unclear whether the extent of his injuries would have been reduced.

The Court finds that a genuine fact issue exists with regard to causation. As a result, summary judgment is inappropriate and Plaintiff's motion as to causation is denied.[1]

### IV. Conclusion

In light of the foregoing, Plaintiff's motion for partial summary judgment (Doc. No. 14) is granted with respect to the elements of duty and breach and denied with respect to the element of causation.

It is so ORDERED.

SIGNED this 11th day of July, 2013.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[1] The Court notes that this is a very close call. As the Court understands Plaintiff's theory, Plaintiff argues that if a stent or some other treatment had been provided on November 27, the damage to his heart that occurred on November 28-29 would not have been so extensive. Defendant's expert even concedes that "it is possible that the level of damage to his myocardium would have been less." However, Dr. Maraj also opines, and is potentially correct, "that it is impossible to say with any degree of certainty, that this would have prevented reoccurrence of his angina."